IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LORENZO VENSON,

      Movant,

v.                                          Case No. 2:05-cv-00454
                                            Case No. 2:01-cr-00261-06

UNITED STATES OF AMERICA,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant, Lorenzo Venson's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket sheet document # 713). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September of 2002, a federal grand jury charged Defendant and six other individuals with various controlled substance offenses in a 12-count superseding indictment. (# 33). Defendant was charged with one count of conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, more than five kilograms of cocaine, and more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count Two). Attorney Herbert L. Hively was appointed to represent Defendant on that

charge.

On December 16, 2002, Defendant waived his right to indictment (# 163), and entered a guilty plea (# 164), pursuant to a written plea agreement (# 165), to a one-count Information alleging conspiracy to distribute an unspecified quantity of cocaine (# 142). During the plea hearing, the following colloquy occurred:

THE COURT:      Tell me what you did that makes you believe you're guilty of that federal felony.

                        * * *

THE DEFENDANT: Yes.  I bought it from Alexander Fernandez and I distributed it.  I sold it, the 9 ounces.

THE COURT:      Where?

THE DEFENDANT: Dunbar, South Charleston, West Virginia.

THE COURT:      And that was in or about October of 1998?

THE DEFENDANT: Yes, sir.

THE COURT:      All right.  Take a seat and I'll ask Ms. Schwartz what your proffer is with regard to the charge in the information, that is, distribution.

MS. SCHWARTZ:  Your Honor, he obtained 9 ounces of cocaine from Alexander Fernandez in October of 1998 at or near Dunbar which he subsequently distributed.

THE COURT:      What's your evidence that he distributed it?

MS. SCHWARTZ:  His own statement, Your Honor.  This is a proffer from the defendant's agreed plea agreement.

MR. HIVELY:     That's correct, Your Honor.

2

          MS. SCHWARTZ:  Alexander Fernandez would also indicate,
                         Your    Honor,    and    has    indicated
                         historically, along with information in
                         the case, that this defendant was, for a
                         long   time,   involved   with   a   drug
                         conspiracy to relate back to distribute
                         multiple quantities of cocaine over a
                         period of time.  This would have been one
                         of the specific instances.

                              *  *  *

          THE COURT:     All right.  Is there any doubt in your
                         mind that you took this 9 ounces in
                         Kanawha  County  within  the  Southern
                         District of West Virginia in October of
                         1998 and distributed it and sold it to
                         other people?

          THE DEFENDANT: Yes, I did, sir.

(# 793, Ex. C at 14-16).  The presiding district judge found that

there was a sufficient factual basis for Defendant's plea.  After

reviewing with Defendant his constitutional rights and the fact

that he was waiving those rights by his plea, and after discussing

the maximum penalty to which Defendant was exposed, the court found

that Defendant's plea was knowing and voluntary.  (Id. at 11-27).

     In addition to the 9 ounces of cocaine powder attributed to

Defendant as offense conduct, Ms. Schwartz indicate that the United

States planned to present relevant conduct evidence of sales of

both cocaine powder and cocaine base that would place Defendant at

a base offense level of 38 under the United States Sentencing

Guidelines.  (Id. at 28).  Mr. Hively agreed that there would be

relevant  conduct,  but  disagreed  as  to  the  amount.   (Id.)

                              3

Accordingly, the court directed the United States to prepare a chart detailing the relevant conduct it believed should be attributed to Defendant, and further ordered the parties to meet and confer concerning objections to the chart. (Id.) The court further ordered the preparation of a Presentence Investigation Report ("PSR") by the United States Probation Office. (Id. at 27).

The PSR estimated that Defendant's relevant conduct in the conspiracy included a marijuana equivalency of 10,984.2 kilograms, which placed Defendant at a base offense level of 36. Prior to sentencing, Defendant, by counsel, submitted numerous objections to the PSR, including objections to the relevant conduct determination. The Probation Officer's summary of Defendant's objections concerning the relevant conduct includes the following statement:

> Mr. Venson believes his relevant conduct should be reflected as 90 [sic; 9?] ounces of cocaine powder, received from Mr. Fernandez, and 5 kilograms of cocaine powder, and 4.5 ounces of crack cocaine received from Mr. Meniar in 1995. It is the view of Mr. Venson, and his counsel, that his relevant conduct should be reflected in a marijuana equivalency of 4,061.7 kilograms.

(PSR at 17).

At Defendant's sentencing hearings conducted on July 1 and July 22, 2003, the district court heard testimony from Defendant's co-conspirators, Arbera Ross, Mervin Meniar, Philip Weldon, and Alexander Fernandez. At the conclusion of the testimony and argument the court made the following finding:

4

> The Court finds that Mr. Meniar's testimony was credible when he testified that there was 20 kilograms of powder. I also find credible the witness Mr. Fernandez called by the defendant which attributes 6 kilograms of powder. Mr. Meniar does not remember an amount of crack. I will attribute no crack cocaine or cocaine base to this defendant. The Court's sentence will be based on 26 kilograms of cocaine powder.

(# 793, Ex. F at 14-15). The court apparently gave no credit to the testimony of Mr. Ross and Mr. Weldon.

Accordingly, the district court found Defendant's base offense level to be 34, based upon a finding that at least 15 kilograms, but less than 50 kilograms of cocaine powder was attributable to Defendant. Defendant received a three-level reduction for acceptance of responsibility, so his total offense level was 31. With a criminal history category of II, Defendant's Guideline sentencing range was 121-151 months. Defendant was sentenced to a term of 121 months of imprisonment, followed by a three-year term of supervised release. The court waived a fine, but imposed a $100 special assessment. (Id. at 32-34). A Judgment was entered on July 24, 2003. (# 247).

Defendant filed a consolidated appeal of his sentence with his co-defendant, Derick A. Geiger, in the United States Court of Appeals for the Fourth Circuit. Defendant's appellate brief challenged the amount of relevant conduct attributed to Defendant. (# 791, Ex. 2). Specifically, Defendant's appellate brief argued:

> Appellant Venson would argue that he did not deny that he had dealings on cocaine powder. He is responsible for the distribution of a little more than 6

5

kilograms of cocaine powder.  He pled guilty to the distribution of cocaine powder that occurred in October 1999 involving Mr. Fernandez.  Appellant would argue that the one-count Information that he pled to regarding the distribution of cocaine powder is consistent with Mr. Venson's position regarding relevant conduct.  Mr. Venson was involved with cocaine powder supplied by Mr. Fernandez.  Merv Meniar did not supply Mr. Venson with cocaine powder.  Mr. Fernandez, under oath, acknowledged a letter that he received from Appellant Venson, in which he responded to and stated that the distribution of 20 kilograms attributed to Mr. Venson was not accurate, and restated in said letter that Mr. Venson was responsible for only 6 kilograms of cocaine powder. (J.A. 186).  Mr. Venson would argue that his Base Level Offense should have been based on the 6 kilograms of cocaine powder, which would equate, using the drug quantity table of the United States Sentencing Guidelines § 2D11.2 to 1,200 kilograms of marijuana equivalent, which would be a Level 32, and a three (3) level reduction for the acceptance of responsibility would have provided Mr. Venson with [an] adjusted offense level of 29 being 97 to 121 months.

(# 791, Ex. 2 at 12-13).

On May 4, 2004, the Fourth Circuit affirmed Defendant's sentence in its entirety. United States v. Venson, No. 03-4622, 96 Fed. Appx. 863, 2004 WL 962767, (4th Cir., May 4, 2004)(per curiam)(unpublished).  (# 323).  The Fourth Circuit specifically found:

Giving due deference to the district court's opportunity to judge the credibility of the witnesses, we reject Appellants' related claim that the district court erred in finding coconspirator testimony to be credible. [United States v. Sampson], 140 F.3d [585] at 591. Accordingly, we hold that the district court did not err in calculating the amount of narcotics attributed to both Venson and Geiger. [Citations omitted.]

(Id.)  On May 5, 2004, Defendant's appointed counsel, Mr. Hively, sent Defendant a letter, enclosing the Fourth Circuit's ruling and

stating, "Please advise if you wish to petition to the United States Supreme Court." (# 793, Ex. I).

On June 24, 2004, during the time in which Defendant could have filed a petition for a writ of certiorari in the United States Supreme Court, the United States Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004), a case which sent a shock wave through Federal and State courts. Beginning shortly after June 24, 2004, legal journals, newspapers, lawyers, and legal commentators engaged in widespread speculation as to whether the United States Sentencing Guidelines were rendered unconstitutional under the reasoning of Blakely. In keeping with today's high-tech web-logs ("blogs"), a blog devoted almost exclusively to Blakely issues became widely known and continues today. *See* http://sentencing.typepad.com. The uncertainty over the continued validity of the Sentencing Guidelines was so great that the Supreme Court expedited review of United States v. Booker, in which the Court ultimately ruled that the Sentencing Guidelines cannot be applied as mandatory restrictions on judicial discretion. Defendant's counsel neither moved for re-hearing en banc, nor filed a timely petition for a writ of certiorari.

On June 2, 2005, Defendant, acting pro se, filed the instant section 2255 motion, alleging the following grounds for relief:

> 1.   Breach of the plea agreement by the government; and ineffective assistance of counsel for failing to contest the breach.

2.   Illegal   and   unconstitutional   sentence;   and
     ineffective  assistance  of  counsel  for  failing  to
     properly contest the sentence.

3.   The  Court  was  without  jurisdiction  to  impose  a
     Guideline sentence.

4.   The  integrity  and  fundamental  fairness  of  this
     criminal  proceeding  has  been  effected  by  counsel's
     failure  to  adhere  to  his  promise  [by  failing  to
     file  a  petition  for  a  writ  of  certiorari  to  the
     Supreme Court.]

(# 713).  Defendant also filed a Memorandum of Law in support of

his motion, and exhibits in support thereof.  (# 714).

On February 15, 2006, pursuant to the undersigned's order, the

United States filed a response to Defendant's section 2255 motion.

(# 793).  Included with the response is an Affidavit of Herbert L.

Hively, which states that Mr. Hively has "no record or memory

indicating that defendant notified [him] of his desires to file a

petition for a writ of certiorari."  (# 793, Ex. J).  Based upon

that statement, the United States' response indicates that "the

United States will not object to Defendant's sentence being vacated

to allow for re-sentencing pursuant to U.S. v. Booker, 125 S. Ct.

738 (2005)."  (# 793 at 1).

On March 31, 2006, Defendant filed a reply brief (# 800) and

a Motion for Appointment of Counsel (# 799).  The reply brief

states in pertinent part:

In  its  response,  the  government  agrees  to  "not
object to Defendant's sentence being vacated to allow for
re-sentencing  pursuant  to  U.S. v. Booker,  125 S. Ct. 738
(2005)."  [Gov.'s  Res.,  at  1,  11].   Moreover,  the
government  submits  that  "Defendant's  second  and  third

8

issues are moot given the United States['] agreement that defendant's sentence should be vacated for re-sentencing." [Gov.'s Res., at 6]. Mr. Venson agrees and expresses his gratitude to the United States for its decision.

The government does dispute that it violated the terms of the plea agreement in this case as presented in Ground I of Mr. Venson's § 2255. However, Mr. Venson submits that if the Court accepts the government's concession and vacates his sentence, his claim in Ground I is also moot because the relevant conduct enhancement, that formed the basis for this breach of plea claim, is also included in Mr. Venson's Fifth and Sixth Amendment claims under Booker.

(# 800 at 1-2). The matter is ripe for determination.

## TIMELINESS OF MOTION

Prior to 1996, a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 was not subject to a specific time limitation with respect to filing of the motion. However, in 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996,(hereinafter the "AEDPA"), which established a one-year period of limitation governing the filing of motions for collateral relief under 28 U.S.C. § 2255.

The one-year period runs from the latest of one of four specified events:

(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or Laws of the United States is removed if the movant was prevented from making such motion by governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been duly recognized by the Supreme Court and made retroactively applicable to cases on review; or (4) the date on which the facts supporting the claim or

claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  Defendant's conviction became final on or about August 4, 2004, when the time for filing a petition for a writ of certiorari in the United States Supreme Court expired.  <u>Clay v. United States</u>, 537 U.S. 522 (2003).  Therefore, the undersigned proposes that the presiding District Judge **FIND** that the one-year statute of limitations began to run on August 5, 2004, and that Defendant's section 2255 motion filed on June 2, 2005 was timely.

<u>**ANALYSIS**</u>

**A.   Enhancement of sentence based on facts not admitted by Defendant.**

In Ground Two of his section 2255 motion, Defendant asserts that his sentence violated his Fifth and Sixth Amendment rights because the sentence was enhanced based upon facts not admitted by Defendant.  (# 713 at 6, Ground Two).  In Ground Three of his motion, Defendant asserts that the district court was without jurisdiction to enhance Defendant's sentence.  (<u>Id.</u> at 7-8, Ground Three).  Defendant bases both of these claims on the Supreme Court's recent decisions in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005).

In Ground Two, Defendant states:

Petitioner entered a plea to a single-count Information charging him with distribution of 9 ounces of cocaine powder.  However, the Court enhanced his sentence by determining on its own that Petitioner was responsible for 20 kilograms of cocaine powder.  Despite this

10

unconstitutional sentence, Petitioner's counsel failed to argue the "facts" determined by the Court was in direct violation of the Apprendi rule. (Please see supporting memorandum).

(# 713 at 6).  The supporting memorandum adds:

Here, Mr. Venson entered a plea of guilty to a single-count of distribution of a specific amount on a specific date. Mr. Venson was never charged, nor did he admit to any other illegal conduct. As such, the only "facts" that can be used to determine Mr. Venson's sentence, without violating his Fifth and Sixth Amendment rights, was the 9 ounces of cocaine powder charged and admitted by Mr. Venson. As such the "statutory maximum" for <u>Apprendi</u> purposes is 46 months based on a base offense level of 20 (excluding acceptance of responsibility) and a Criminal History Category II.

At sentencing, however, the Court determined that the amount of cocaine powder attributable to Mr. Venson was 20 kilograms. Thus, the Court increased Mr. Venson's punishment from a guideline level of 20 to a guideline level of 34 (prior to the 3-level reduction for acceptance of responsibility), by determining facts that were not included in this indictment or admitted to by Mr. Venson. As such, these findings increased Mr. Venson's "statutory maximum for <u>Apprendi</u> purposes" from 46 months to 210 months [footnote omitted].

(# 714 at 20).  In Ground Three of his motion, Defendant states:

The Supreme Court has recently ruled that the Federal Sentencing Guidelines are unconstitutional, at least with regard to the mandatory imposition of those guidelines to a federal defendant's sentence. In fact, the Court concluded that the Guidelines have been unconstitutional since their inception. As such, the Court did not have jurisdiction in this case to impose a mandatory Guideline sentence. (Please see supporting memorandum).

(<u>Id.</u> at 7-8).  This claim operates on the premise that "the mandatory nature of the Guidelines was and has been unconstitutional since its enactment in 1984." (# 714 at 24).

11

On January 12, 2005, the Supreme Court decided <u>Booker</u>, which reaffirmed the Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), applied the holding in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  542 U.S. at 244.  The <u>Booker</u> holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" <u>Id.</u> at 268 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987)).

When Defendant filed his section 2255 motion, his case had concluded direct review and was final.  Thus <u>Booker</u> does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.  <u>United States v. Morris</u>, 429 F.3d 65, 70 (4th Cir., 2005).   For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his alleged Fifth and Sixth Amendment violations as stated in Grounds Two and Three of his section 2255 motion.  However, if the presiding District Judge adopts the proposed findings and recommendation of the undersigned with respect to Defendant's ineffective assistance of counsel claim concerning his appellate rights, then Defendant will presumably be

subject to re-sentencing, with a re-evaluation of his relevant conduct and the application of the advisory Guidelines to his sentence.

## B.   Ineffective Assistance of Counsel Claims

Defendant also asserts several claims of ineffective assistance of counsel. He claims that, both at sentencing and on appeal, Mr. Hively failed to challenge the increase of Defendant's sentence based upon facts not admitted by Defendant, that Mr. Hively failed to object to a breach of his plea agreement, and that Mr. Hively failed to secure Defendant's opportunity for a continuation of his direct appeal by filing a petition for a writ of certiorari on his behalf.

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. 466 U.S. at 688-89.

In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are

alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would not have plead guilty and would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52 (1985). Before a guilty plea will be set aside based upon the fact that the defendant was incompetently advised, it must be shown that: (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process, if the case had proceeded to trial; and (3) the guilty plea must have been motivated by the error. See United States v. Craig, 985 F.2d 175, 179 (4th Cir. 1993).

14

1.    Failure to challenge enhancements.

In Ground Two of his motion, Defendant also asserts that his counsel was ineffective, both at sentencing and on appeal, for failing to challenge the increase of his sentence based upon facts not admitted by Defendant.  (# 713 at 6).  His memorandum of law in support of the motion states:

> Mr. Venson respectfully submits that counsel's failure to properly raise and challenge the Apprendi errors that occurred at the district level falls below the accepted reasonableness for criminal defense attorneys.  As this Court is well aware, both Apprendi and the Blakely interpretation arguments were available for Mr. Venson's counsel to prevent the sentencing court from determining his "statutory maximum" in direct violation of Mr. Venson's Fifth and Sixth Amendment rights.

(# 714 at 23).

The United States' response does not specifically address this claim.  Rather, it focuses on Defendant's claim that his appointed counsel failed to continue his direct appeal to the United States Supreme Court.   The undersigned notes that, although not specifically challenged on the basis of Fifth or Sixth Amendment error, Defendant's counsel did challenge the enhancement of Defendant's sentence based upon relevant conduct not admitted by Defendant or proven beyond a reasonable doubt to a jury. Accordingly, assuming that the presiding District Judge adopts the undersigned's proposed findings and recommendation concerning appellate counsel's failure to file a petition for a writ of certiorari, Defendant's Fifth and Sixth Amendment claims may be

15

revisited upon re-sentencing.

At the time of sentencing, Mr. Hively was not expected to be clairvoyant concerning the Supreme Court's subsequent ruling in Booker, and Defendant's sentence was appropriate under the ruling in Apprendi at that time. Mr. Hively lodged various objections to the relevant conduct attributed to Defendant in the PSR. Mr. Hively vigorously cross-examined the government witnesses and challenged their testimony. Nevertheless, the district court ultimately found the testimony of Mervin Meniar and Alexander Fernandez to be credible and attributed that relevant conduct to Defendant. Mr. Hively also challenged the relevant conduct determination in Defendant's direct appeal. That challenge was also unsuccessful.

Based upon all the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that Mr. Hively's conduct with regard to challenging the relevant conduct attributed to Defendant at sentencing and in his direct appeal was reasonable under the circumstances.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no collateral relief on his ineffective assistance of counsel claim, as stated in Ground Two of his motion, concerning his sentencing and the issues raised on direct appeal.

Mr. Hively's obligation to Defendant did not end there, however. The Plan of the United States Court of Appeals for the Fourth Circuit In Implementation of The Criminal Justice Act ("CJA Plan") provides as follows:

### V.  ATTORNEY'S DUTY TO CONTINUE REPRESENTATION

* * *

2.  <u>Appellate Counsel</u>: Every attorney, including retained counsel, who represents a defendant in this court shall continue to represent his client after termination of the appeal unless relieved of further responsibility by this court or the Supreme Court.  Where counsel has not been relieved:

If the judgment of this court is adverse to the defendant, counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari.  If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant.  Thereafter, unless otherwise instructed by the Supreme Court or its clerk, or unless any applicable rule, order or plan of the Supreme Court shall otherwise provide, counsel shall take whatever further steps are necessary to protect the rights of the defendant, until the petition is granted or denied.

If the appellant requests that a petition for writ of certiorari be filed but counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari.  The motion must reflect that a copy was served on the client.

Similar language appears in the "Memorandum To Attorneys Appointed Under The Criminal Justice Act," also published by the Fourth Circuit.

The American Bar Association's publication which sets standards for attorneys who defend persons charged with crimes addresses the appellate duties of counsel as follows:

Standard 4-8.3 Counsel on Appeal

(a) Appellate counsel should not seek to withdraw from a case solely on the basis of his or her own determination that the appeal lacks merit.

* * *

(c) If the client chooses to proceed with an appeal against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court.  When counsel cannot continue without misleading the court, counsel may request permission to withdraw.

ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3rd ed., § 4-8.3, at 239 (1993).  In the Commentary to the Standard, the following appears:

Once counsel has accepted appointment or has been retained to pursue a client's case on appeal, he or she should continue representation of the client until all direct appeal possibilities desired to be pursued by the client are exhausted, new counsel is substituted, or a court otherwise orders or permits counsel to withdraw.

Id., at 242.

Defendant's memorandum of law in support of his section 2255 motion states as follows:

Mr. Venson had until August 2, 2004 in which to petition the United States Supreme Court for a writ of certiorari.

* * *

Immediately after learning of the Blakely decision, Mr. Venson contacted his appellate counsel.  In fact, Mr. Venson corresponded with counsel first by letter and then

18

via telephone.  In his letter to counsel, Mr. Venson
informed counsel of the _Blakely_ decision and stated his
belief that _Blakely_ was applicable to his case. Mr.
Venson ended his letter by asking counsel to file a
petition for a writ of certiorari to the United States
Supreme Court.  During the subsequent phone conversation
with counsel, Mr. Venson again reiterated his belief that
_Blakely_ applied to his sentence, and again asked counsel
to prepare and file a certiorari petition.  In response,
counsel stated that he was unsure of whether or not
_Blakely_ applied to the federal Guidelines, but that, if
it did apply, Mr. Venson would be entitled to any benefit
from that ruling pursuant to _Griffith v. Kentucky_, 479
U.S. 314 (1987).  Finally, counsel assured Mr. Venson
that he would prepare and file a timely petition for a
writ of certiorari on Mr. Venson's behalf, and would
forward him a copy of that petition.

Approximately two weeks after his August 2, 2004
deadline for filing a petition for a writ of certiorari
had passed, Mr. Venson still had not received a copy of
the promised certiorari petition from his counsel.  As a
result, Mr. Venson began trying to contact counsel via
phone.  However, Mr. Venson was unsuccessful in those
attempts until sometime in late September 2004.  When Mr.
Venson inquired about the certiorari petition, counsel
informed Mr. Venson that he had decided not to file one
because he didn't believe _Blakely_ applied to the Federal
Guidelines.

(# 714 at 26-27).  As noted in Mr. Hively's affidavit, he does not

remember, nor does he have any notation in his file concerning

Defendant's request to file a petition for a writ of certiorari.

(# 793, Ex. J).

When Defendant was sentenced, Judge Goodwin applied the

Guidelines as he was mandated to do, having heard testimony and

made findings of fact as to relevant conduct.  Judge Goodwin has

described the post-_Booker_ advisory Guideline regime as "a

completely new universe for federal sentencing courts."  _United_

States v. Gray, 362 F. Supp.2d 714, 722 (S.D. W. Va. 2005).

The procedural and substantive differences between continuing a direct appeal and filing a § 2255 motion are significant indeed. The Booker decision specifically states that it is to be applied "to all cases on direct review or not yet final." 543 U.S. at 268. Based on Booker, the Fourth Circuit has ruled that defendants whose sentences were premised on drug quantities neither found by the jury nor admitted by the defendant, and which were imposed under a mandatory Sentencing Guidelines regime, are entitled to be resentenced. United States v. Hughes, 401 F.3d 540, 555-56 (4th Cir. 2005).

By contrast, ten circuit courts of appeals (including the Fourth) have ruled that Booker does not apply retroactively to cases on collateral review. See United States v. Morris, 429 F.3d 65 (4th Cir. 2005); United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005); Padilla v. United States, 416 F.3d 424 (5th Cir. 2005)(per curiam); Never Misses A Shot v. United States, 413 F.3d 781 (8th Cir. 2005)(per curiam); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005); Lloyd v. United States, 407 F.3d 608 (3rd Cir.), cert. denied, 126 S. Ct. 288 (2005); Guzman v. United States, 404 F.3d 139 (2nd Cir.), cert. denied, 126 S. Ct. 731 (2005); Humphress v. United States, 398 F.3d 855 (6th Cir.), cert. denied, 126 S. Ct. 199 (2005); Varela v. United States, 400 F.3d 864 (11th Cir.)(per curiam), cert. denied, 126 S. Ct. 312 (2005); McReynolds v. United

<u>States</u>, 397 F.3d 479 (7th Cir.), <u>cert. denied</u>, 125 S. Ct. 2559 (2005).  Not one circuit court of appeals has decided that <u>Blakely</u> or <u>Booker</u> applies retroactively on collateral review.

While there is no guarantee that Defendant's sentence would be different under the now advisory Guidelines, the only certain way to obtain review of Defendant's case in light of the <u>Blakely</u> and <u>Booker</u> decisions was to continue his direct appeal.  It is highly likely that, if a petition for a writ of certiorari had been filed, Defendant's case, like thousands similar to it, would have been held pending the anticipated Supreme Court decision on the validity of the Sentencing Guidelines.  Most of those cases have been remanded for proceedings consistent with <u>Booker</u>.

As a result of the failure to pursue a petition for certiorari, Defendant was deprived of the opportunity to have his sentence remanded for proceedings consistent with <u>Booker</u>, and, possibly, imposed by Judge Goodwin in the "completely new universe" of non-mandatory Guidelines.  The post-<u>Booker</u> system is less restrictive and district judges have more discretion than previously.  It is possible that post-<u>Booker</u>, Defendant would receive the same sentence as pre-<u>Booker</u>; knowing such a fact for a certainty is not the standard.  Rather, to determine whether a defendant has been prejudiced as a result of his attorney's failure to provide effective assistance of counsel, the court must determine whether there is a "reasonable probability" that the

result of the proceeding would have been different.

Defendant admitted to distributing nine ounces of cocaine powder. Such an admission put him at a Guideline Level of 20. Based upon the relevant conduct attributed to Defendant by Mervin Meniar and Alexander Fernandez, conduct which Defendant has not admitted, and which has not been determined beyond a reasonable doubt by a jury, Defendant's total offense level, after a reduction for acceptance of responsibility, was 31.

Under the mandatory Guideline scheme, Judge Goodwin was obligated to sentence Defendant within a range of 121-151 months. Without the relevant conduct attribution, Defendant's sentence could have been as low as 37-46 months. Defendant objected to the attributed relevant conduct throughout his criminal proceedings, and there is a reasonable probability that, under his own discretion, Judge Goodwin might not give Meniar's testimony the weight he gave it under the mandatory scheme. Thus, the "reasonable probability" standard has been met.

As indicated in its Response, "the United States will not object to Defendant's sentence being vacated to allow for re-sentencing pursuant to <u>U.S. v. Booker</u>, 125 S. Ct. 738 (2005)." (# 793 at 11). The undersigned agrees that this is the best resolution of this claim.

For the foregoing reasons, the undersigned proposes that the presiding District Judge **FIND** that:

-- Mr. Hively's representation of Defendant post-direct appeal fell below an objective standard of reasonableness in that he failed to preserve Defendant's right to pursue his direct appeal to the United States Supreme Court.

-- Defendant was denied effective assistance of counsel in connection with his appeal on and after June 24, 2004.

-- Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different in that Defendant's case would likely have been remanded for proceedings consistent with Booker.

-- The United States does not object to Defendant's re-sentencing under Booker.

> 2. Failure to challenge alleged breach of plea agreement.

In Ground One of his motion, Defendant asserts that the United States breached his plea agreement by arguing that certain relevant conduct should be attributed to him. Specifically, Defendant's motion states:

> The plea agreement in this case required the government to refrain from recommending a specific sentence, and to refrain from opposing the granting of acceptance of responsibility reduction. However, the government argued that Petitioner's sentence should be based on 20 kilograms of cocaine powder and 10 ounces of cocaine base. In addition, the government argued against Petitioner receiving an acceptance of responsibility reduction.

(# 713 at 5, Ground One). Defendant further asserts that his

counsel was ineffective because he failed to challenge the alleged breach of Defendant's plea agreement. Specifically, Defendant states:

> Any reasonably competent counsel would have raised this claim at the district level and on appeal. Clearly, there can be no strategic or tactical reason justifying counsel's failure to do so here. Had Mr. Venson's counsel done so here, his sentence would have been significantly less, i.e., his sentence would have been based on 6 kilograms of cocaine powder instead of 20 kilograms. McQueen, 108 F.3d at 66-67 (holding that defendant is entitled to specific performance of plea agreement).
>
> Accordingly, Mr. Venson's sentence must be corrected to reflect a sentence in compliance with the "reasonable understanding" of the terms of the plea agreement. Id. Otherwise, Mr. Venson is entitled to withdraw his plea. Santobello, supra. Alternatively, an evidentiary hearing is mandated in this matter. Blackledge v. Allison, 431 U.S. 63 (1977)(holding that a habeas petitioner who raises a breach of plea agreement claim is entitled to an evidentiary hearing unless his claim is patently incredible).

(# 714 at 8-9).

The United States's Response states that this is the first time that Defendant has raised this claim in any proceeding, and that such claim lacks merit. The Response further states:

> The Plea Agreement does not require the United States to "remain neutral regarding the determination and recommendation of a specific sentence." Nor does it prohibit the United States from presenting witnesses. On the contrary, it specifically reserves the United States the right to "respond to questions raised by the court" which is exactly what it did during sentencing. During Defendant's plea hearing, Defendant was fully apprised of the terms of his plea agreement and agreed to those terms. (Exhibit C.)

24

Defendant raised objections to the relevant conduct calculation in the Presentence Report.  The Court asked about the United States['] position and it presented witness testimony on that point.  After said testimony, the district court specifically asked the United States which testimony should be credited.  The United States responded and the court ruled.

Defendant also asserts that the United States improperly argued that Defendant should not get credit for acceptance of responsibility. (Defendant's Brief P. 8.)  This is simply inaccurate.  The sentencing transcript clearly sho[w]s that the United States did not oppose the district court's decision to award a three level reduction for acceptance of responsibility, even after the contested sentencing hearing. (Exhibit F 192-193) [Footnote 2: The United States had filed an objection to the Presentence Report's recommendation for an award of acceptance of responsibility, but, after the sentencing hearing, did not persist.  Even if it had persisted, however, there would not be a breach of the plea.]

Defendant's ultimate sentence of 121 months was at the bottom of the applicable guideline and well below the 20 year statutory cap.

Defendant's claim that Mr. Hively failed to challenge a breach of the plea agreement is refuted simply by the fact that there was nothing to challenge. The plea agreement was not breached and, therefore, no challenge by Mr. Hively was necessary.

(# 793 at 8-9).

Defendant's assertions concerning his plea agreement are misplaced.  During the plea hearing, the following colloquy occurred:

THE COURT:      Have you discussed with Mr. Hively the application of the guidelines to your case?

THE DEFENDANT: Yes, sir.

* * *

25

```
THE COURT:      Do you understand that I won't be able to
                determine your exact guideline range
                until the pre-sentence report has been
                completed and you and the Government have
                had an opportunity to review and
                challenge the facts reported in that
                document, and only after I've resolved
                all that will I be able to determine your
                guideline sentencing range?

THE DEFENDANT: Yes, sir.

THE COURT:      Do you understand the sentence I impose
                may be different from any estimate that
                Mr. Hively may have given you or anyone
                else has given you?

THE DEFENDANT: Yes, sir.
```

(Id. at 20-21).  The Guidelines provide for enhancements based upon

relevant conduct not charged in the charging document and not

admitted by the defendant as offense conduct, and the United

State's presentation of evidence concerning such relevant conduct

in response to the court's request for supporting evidence was not

a breach of his plea agreement.  Furthermore, it is evident, from

the sentencing transcript, that the United States did not oppose

the reduction in Defendant's guideline level for acceptance of

responsibility.

The undersigned proposes that the presiding District Judge

**FIND** that the imposition of a sentence based upon relevant conduct

above and beyond that of the offense conduct agreed to during

Defendant's plea hearing did not constitute a breach of the plea

agreement, and that Mr. Hively's failure to object to such sentence

26

was not constitutionally ineffective.  Thus, Defendant is entitled to no relief on Ground One of his section 2255 motion.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the District Court **GRANT** Defendant's Motion filed pursuant to 28 U.S.C. § 2255, with respect to his claim of ineffective assistance of his appellate counsel, as asserted in Ground Four of his motion, and **DENY** the other grounds for relief contained in Defendant's section 2255 motion (# 713).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a

waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Lorenzo Venson, and to counsel of record.

    July 19, 2005
        Date

                                Mary E. Stanley
                                United States Magistrate Judge